**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CR. No. 2:23-CR-20191-MSN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **EMMITT MARTIN III,** | ) | |
| **TADARRIUS BEAN,** | ) | |
| **DEMETRIUS HALEY,** | ) | |
| **DESMOND MILLS JR., and** | ) | |
| **JUSTIN SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**UNITED STATES' MOTION IN LIMINE
TO PRECLUDE USE OF INADMISSIBLE AND IMPROPER CHARACTER
EVIDENCE**

The United States of America, by and through undersigned counsel, moves this Court to enter an Order excluding any improper reference to or inadmissible evidence of the deceased victim's alleged character or alleged prior acts, including at trial and in any public pretrial filings. It appears from their early pretrial filings that Defendant Haley, joined by Defendants Bean and Smith, will seek to attack the character of their now-deceased victim at trial in hopes that the jury will improperly and incorrectly conclude that he was undeserving of constitutional protection. The United States requests an immediate hearing on this issue if necessary for the Court so that any attempts to improperly and unfairly malign Nichols' character stop now.

Defendants Haley, Bean, and Smith recently sought to compel the United States to produce the contents of victim's phone, even though the defendants assaulted Tyre Nichols without knowing anything about the contents of his phone or his car, or about his life. Instead, the

defendants acted solely based on the information known to them at the time of the charged conduct. The defendants should not be allowed now to use discovery and public filings to collect and disseminate inadmissible, unsubstantiated claims about the victim to publicly disparage him, particularly when the victim, by virtue of his death in custody, cannot defend himself or refute the defendants' claims. Any defense efforts to improperly use discovery requests and publicly-filed pretrial motions for purposes of attacking the deceased victim's character are prohibited by well-established, binding precedent and the Federal Rules of Evidence. Furthermore, such efforts suggest an intent to taint the jury pool and to improperly seek jury nullification at trial. The United States requests that the Court enter an order prohibiting the defendants from referencing such inadmissible evidence in publicly-available pretrial filings, during *voir dire*, or during trial, because such references would result in prejudice that could not be rectified, even if the Court sustained the government's timely objection.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2023, Tyre Nichols was the subject of a traffic stop by Memphis Police Department officers, including two of the defendants. According to the officers, they stopped Nichols because he was speeding and committing traffic infractions. Officers pulled Nichols from his car and used force on him following the traffic stop. Nichols, as captured on body-worn camera footage, protested that the officers were "doing a lot" and said that he was "just trying to go home." When the officers continued to use force, Nichols ran from the scene. The defendants pursued him. When the defendants pursued Nichols, they knew that he had run from a traffic stop and that pepper spray and a taser had been deployed.

When the defendants caught Nichols, they struck, batoned, and kicked him. Some of these strikes were to Nichols' head. As the defendants used force against Nichols, he yelled for his

mother.  After the assault, none of the defendants told first responders that Nichols had been struck repeatedly, including that he had been struck in the head.  When the defendants ran Nichols' criminal history, they learned that he was not wanted for any crime, and he had no relevant criminal history.

Nichols passed away from his injuries three days later.  A toxicology screen conducted after Nichols was transported by ambulance from the scene of the defendants' assault to a nearby hospital revealed only that Nichols had previously consumed alcohol and used marijuana.  His blood alcohol level was well below the legal limit.

Against this backdrop, and even though none of the defendants knew anything about Nichols prior to encountering him on the night of the assault, defendant Haley, joined by defendants Bean and Smith, moved to compel the production of information on Nichols' phone. These defendants have never claimed that they possessed information on the victim's phone at the time of the assault or that it was relevant to their decision to use force on Nichols on January 7. Rather, they maintain that further investigation of the victim may reveal that he previously engaged in some prior uncharged, "bad" or criminal conduct, which they did not know about at the time they assaulted Nichols.  Defendant Haley later withdrew his motion for production of the phone, acknowledging that it was moot,[1] but this filing occurred only after defense counsel for Defendant Smith included disparaging, unsubstantiated information in a public filing attacking the character of the victim.  See ECF No. 60.  Defense counsel for Defendant Smith asserted that Nichols' toxicology testing was incomplete because it did not include testing for psilocybin or its metabolite; in fact, the toxicology examination did test for that metabolite and concluded that none

---

[1] It appears that state authorities provided defense counsel with the contents of the victim's phone; it is unclear whether the defendants had this material prior to the filing of defendant Haley's Motion to Compel.

was present in Nichols' system.  In the same public filing, counsel for defendant Smith asserted,
without any court records, that "stolen" items were later discovered in the victim's car.

## ARGUMENT

The defense efforts to attack Mr. Nichols' character to justify the defendants' assault after
the fact is plainly prohibited by Supreme Court precedent, Sixth Circuit precedent, and the Federal
Rules of Evidence.

### A.    Alleged "Bad Character" Evidence About Mr. Nichols Serves Only to Taint the Jury Pool and Invite Nullification, Because it is Irrelevant to the Charged Conduct.

The defendants' public allegations about what it claims are Mr. Nichols' "bad" acts prior
to his death are unsubstantiated, inappropriate, irrelevant, inadmissible, and risk tainting the jury
pool.  Defense counsel made these public allegations even though he was on notice that federal
caselaw makes it obvious that such evidence is inadmissible.  Defense counsel also made these
public allegations even though they are unsubstantiated:  Mr. Nichols was not charged with any
offenses at all in the hours, days, months, and even years leading up to the defendants' assault, and
the toxicology screen from Mr. Nichols' autopsy reflects only marijuana and a blood alcohol level
well below the legal limit.

In any event, such evidence is categorically irrelevant to any potential defense and should
be excluded.  There is no evidence that any defendant knew anything at all about Mr. Nichols,
including any actions he took or any character he demonstrated, prior to encountering him on the
date they assaulted him.  Such evidence is therefore wholly irrelevant to the charged offenses.

As previously explained in the United States' Opposition to Defendant Haley's Motion to
Compel, ECF No. 61, the defendants stand charged with violating 18 U.S.C. § 242 and with
conspiring to obstruct and obstructing the investigation of their assault of Mr. Nichols.  To prove

that a defendant violated § 242, the government must show that he acted under color of law to willfully deprive an arrestee of his Fourth Amendment right to be arrested without unreasonable force. See United States v. Lanier, 520 U.S. 259, 264 (1997). To prove the constitutional deprivation, the government must show that the defendant used an objectively unreasonable amount of force. See Graham v. Connor, 490 U.S. 386, 397 (1989). As the Supreme Court and the Sixth Circuit have repeatedly explained, this objective reasonableness inquiry assesses "reasonableness at the moment," in light of "the facts and circumstances confronting them." Goodwin v. City of Painesville, 781 F.3d 314, 321 (6th Cir. 2015) (quoting Graham, 490 U.S. at 386).

In other words, the Fourth Amendment requires courts to "consider[] only the facts the officers knew at the time of the alleged Fourth Amendment violation." Miller v. Vill. of Pinckney, 365 F. App'x 652, 654 (6th Cir. 2010) (internal quotation marks omitted); see also, e.g., United States v. Harris, 735 F.3d 1187, 1191 (10th Cir. 2013) ("The Fourth Amendment requires [courts] to evaluate the reasonableness of searches and seizures based on the facts *known to officers when the event in question occurred*.") (emphasis added). This bright-line rule exists to protect police officers from being second-guessed with the benefit of hindsight; it also obviates any need for any investigation into facts that were not available to the police officers at the time of their use of force. See Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994) (stating that the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident in question. Such a perspective serves two purposes. First, using the officer's perception of the facts at the time limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight. Second, using this perspective limits the need for decision-makers to sort through conflicting versions of the 'actual' facts, and allows them to focus instead on what the police officer reasonably perceived.")

(citations omitted).  For this reason alone, federal courts have repeatedly refused to admit alleged "bad character" evidence about victims in 18 U.S.C. § 242 cases.  See, e.g., United States v. Maynard, ECF No. 52, Case No. 2:21-cr-00065 (S.D. W. Va. 2021) (granting government's motion to exclude alleged "bad character" evidence and noting that it was "difficult to imagine how the victim's character trait of regular intoxication is pertinent to the Defendant's alleged violation of [the victim's] civil rights or the reasonableness of the force used by the Defendant"); United States v. Legins, ECF No. 80, Case No. 3:19-cr-000104-DJN (E.D. Va. 2020) (granting in relevant part government's motion to exclude alleged "bad character" evidence).

The defendants did not know anything about Mr. Nichols before they encountered him on the day they assaulted him.  Any actions Nichols took or character he evinced before that encounter is irrelevant to the charged offenses, because the defendants did not know about it at the time they acted.  See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) ("A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." (citing Graham, 490 at 396)); Dickerson v. McClellan, 101 F.3d 1151, 1155 n.3 (6th Cir. 1996) ("[Courts] must consider only the facts the officers knew at the time of the alleged Fourth Amendment violation."); Grant v. City of Chicago, 2006 WL 8460591 *1, *11 (N.D. Ill. August 4, 2006) (citing the Graham line of cases to hold that "the relevant inquiry in the instant matter is what [the officer] knew prior to and at the time he shot [the victim], not what other officers knew at the time or what was learned after the incident"; refusing to admit evidence that victim was arrested with a gun on a prior occasion; and noting that the victim's "motivations, intentions, or plans are irrelevant to the issue of liability; what is relevant is what [the officer] knew at the time of the shooting").  Irrelevant evidence is inadmissible.  See Fed. R. Evid. 402.  The Court can grant the present motion on that basis alone.

### B.    The Federal Rules of Evidence Do Not Allow Defendants to Impeach Their Deceased Victims.

Even if the defendants could show that such evidence is relevant, which they cannot, the Federal Rules of Evidence do not allow defendants to attack the character of their deceased victims. Only testifying witnesses may be impeached. See Fed. R. Evid. 608(a) (permitting impeachment of a "witness"); Old Chief v. United States, 519 U.S. 172, 176 n.2 (1997) (explaining prior convictions may not be admitted for impeachment if subject does not testify); United States v. Stephens, 365 F.3d 967, 975 (11th Cir. 2004) (holding that, under the Federal Rules of Evidence, "witness" "refer[s] solely to someone whose testimony is actually offered as evidence at trial"); United States v. Johnson, 872 F.2d 612, 619 (5th Cir. 1989) (holding that a particular victim cannot be impeached until that victim's statement is before the jury). Evidence that is offered solely for the purpose of discrediting a deceased victim who cannot testify is therefore inadmissible. See United States v. Boen, ECF No. 62, Case No. 2:19-CR-20037-TLB (W.D. Ark. 2021) (refusing to admit character evidence about victim unless he testified at 18 U.S.C. § 242 trial).

### C.    Alleged "Bad Character" Evidence About Mr. Nichols is Inflammatory, Highly Prejudicial, and Likely to Confuse the Issues and Mislead the Jury.

The Federal Rules of Evidence require that the Court exclude the defendants' unsubstantiated claims about Mr. Nichols for another, equally important reason: Even if the defendants could substantiate their post-incident claims, and even if they could explain why these claims are relevant, which they cannot, such information must be excluded because it is inflammatory, highly prejudicial, and likely to confuse the issues and mislead the jury. Evidence must be excluded if its probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Unfair prejudice

under the rule refers to evidence that "tends to suggest decision on an improper basis."  United

States v. Newsom, 452 F.3d 593, 604 (6th Cir. 2006) (internal quotations omitted).

Character evidence relating to a victim is exactly the type of evidence that risks causing

unfair prejudice because of the potential that it will be used simply to tarnish a victim by suggesting

a propensity to commit bad acts, thus encouraging jury nullification.  See, e.g., U.S. v. Gibbs, 797

F.3d 416, 425 (6th Cir. 2015); McCormick on Evidence § 193 at 572 (Cleary ed. 1984) (explaining

that character evidence relating to a victim is disfavored because "[l]earning of the victim's bad

character could lead the jury to think the victim merely 'got what he deserved' and to acquit for

that reason").  Thus, even in cases in which there is substantiated, potentially pertinent character

evidence to offer—which is not the case here—courts may exclude evidence of an adverse trait

pursuant to Rule 403.  See, e.g., United States v. Milk, 447 F.3d 593, 600-01 (8th Cir. 2006)

(affirming exclusion of testimony regarding victim's prior stabbing offense under Rule 403

because of "significant risk of mini-trial" and lack of probative value); United States v. Schatzle,

901 F.2d 252, 256 (2nd Cir. 1990) (affirming exclusion in excessive force trial of testimony about

victim's involvement in prior altercation because the risk of confusion of issues substantially

outweighed the probative value); cf. United States v. Richardson, 793 F.3d 612, 627-28 (6th Cir.

2015) (finding that, under Rules 403 and 608(b), the trial court properly excluded cross

examination into a judicial finding that a government witness was not credible in a prior

proceeding because inquiry into the circumstances of that proceeding would require "detailed

testimony regarding an entirely collateral matter in order to assess its probative value.  This type

of collateral 'mini-trial' is precisely what Rule 608(b) is intended to prevent.").

Reference to Mr. Nichols' allegedly "bad" character or allegedly "bad" acts, even if the

defendants could find any indication at all that such allegations are relevant, should be excluded

under Rule 403 because any nominal probative value of such evidence—which no defendant has established—is far outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  Reference to such evidence would only serve the improper purpose of appealing to the emotions of the jury in an attempt to make the jury dislike the victim and acquit for that reason alone.

Rule 403 balancing weighs particularly against introducing character or bad act evidence in this case.  The defendants' beating of Mr. Nichols is captured on video and the defendants documented their purported perceptions afterwards in their official reports.  The defendants may present evidence about any information they reasonably perceived at the time they decided to use force against Mr. Nichols, but they may not present evidence about information they did not have, as that information could not have affected their decision to use force.  Any remote additional probative value that the defendants might claim regarding Mr. Nichols' character is strongly outweighed by the risk of unfair prejudice and the costs to judicial economy—including occupying the jury's time and attention—of focusing proceedings on facts that did not matter to the defendants when they beat Nichols to death, and which do not matter now.  Accordingly, evidence to disparage Nichols' character—allegations to which he can no longer respond—should be excluded under Rule 403.[2]

### D.    The Defendants Should be Prohibited from Improperly Using Discovery Requests or Public Pretrial Filings in an Attempt to Taint the Jury Pool.

The United States requests a pretrial order at this early stage because some of the defendants have used discovery-related public filings in an apparent effort to attack the character

---

[2] Even if the defendants could identify some basis in law or in fact to admit character evidence about the victim, and even if they could substantiate their claims, the form of any such evidence would be governed by Federal Rule of Evidence 405(a), which limits such evidence to "testimony as to reputation or by testimony in the form of an opinion."  Fed. R. Evid. 405(a).  That is, a defendant is not permitted to offer proof of specific instances of conduct in keeping with the character trait.  Fed. R. Evid. 405(a); Michelson v. United States, 355 U.S. 469, 477 (1948).

of the deceased victim in advance of trial.  As a result, unsubstantiated and misleading information about the victim has appeared in local and national media coverage.  Further, defendants have made discovery requests that appear designed to seek out additional information to attack the victim's character.  Defendants have requested that the government produce information related to the victim that federal courts have uniformly said is obviously irrelevant and inadmissible at trial.[3]

Granting the instant motion will confirm for the defendants that it is well-settled that defendants' request for an investigation of the deceased victim is not required by the federal discovery rules.  Since this information about the victim's past is plainly irrelevant and would be inadmissible at trial, the government need not produce any such information in discovery.  A ruling at this time would obviate any need for the defense to file additional discovery requests that needlessly, unfairly, and publicly attack the victim's character.

Granting the instant motion also will protect the integrity of this criminal case, so that it can be tried in court with relevant, admissible evidence.  Speculative and inflammatory accusations offered in public filings and media interviews "risk prejudicing the government's case with the jury pool, even though the allegations may end up playing no role at trial in this case." United States v. Sittenfeld, No. 1:20-cr-142, 2021 WL 1438300 (S.D. Ohio Apr. 15, 2021). "Intense publicity surrounding a criminal proceeding—what Justice Frankfurter referred to as 'trial by newspaper'—poses significant and well-known dangers to a fair trial." United States v. Brown, 218 F.3d 415, 423 (5th Cir. 2000) (quoting Pennekamp v. Florida, 328 U.S. 331, 359

---

[3]  After government counsel inquired as to the basis for these defense requests and offered to discuss the subject further, defendants responded by turning to the Court to allege, baselessly, that the government had not satisfied its discovery obligations.  As the government has emphasized, discovery is ongoing and the government anticipates additional productions in the near future. The government will continue to work with defense counsel to produce discovery that is required by the Federal Rules and the relevant caselaw.

(1946) (Frankfurter, J., concurring)).  Accordingly, courts have recognized their "affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity."  Id. (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 378 (1979)).  Here, as in Sittenfeld, "[t]here is also the distinct risk that dissemination of these allegations will prejudicially taint the jury pool by exposing it to information that the Court rules is irrelevant or otherwise inadmissible at trial."  2021 WL 1438300.  Accordingly, the United States respectfully requests that the Court enter an order prohibiting the defendants from referring to alleged and irrelevant "bad" character and "bad" acts about the victim in public pretrial filings and at trial.  Such evidence is inadmissible and would serve only to invite nullification and taint the jury pool.

## CONCLUSION

For the foregoing reasons, the United States moves this Court to enter the attached proposed order excluding from trial and from reference in public pretrial filings any purported evidence of, or reference to, Tyre Nichols' "bad" character and any specific instances of his alleged "bad" conduct unrelated to the charged offenses.  Attacks on the character or credibility of the deceased victim in this case would invite nullification by improperly suggesting that Mr. Nichols was unworthy of constitutional protection.  Such evidence, if it exists at all, is irrelevant and prohibited under Federal Rules of Evidence 401 and 402, among other Rules, and is also unfairly prejudicial evidence prohibited under Rule 403.  If the Court determines that a hearing is necessary, the United States respectfully requests a hearing at the Court's earliest convenience.

This 20th day of October 2023.

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103
(901) 544-4231
Elizabeth.Rogers@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:   s/ Forrest Christian
FORREST CHRISTIAN
Deputy Chief
KATHRYN GILBERT
Special Litigation Counsel
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 616-2430
kathryn.gilbert@usdoj.gov

## CERTIFICATE OF SERVICE

I, Forrest Christian, Deputy Chief in the Criminal Section of the Civil Rights Division, hereby certify that a copy of the foregoing Motion in Limine has been sent via the District Court's Electronic Filing System.

This 20th day of October 2023.

*s/Forrest Christian*
FORREST CHRISTIAN
Deputy Chief
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 305-5222
forrest.christian@usdoj.gov

13