IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cr-20191-SHL |
| | ) | No. 2:25-mc-00030-SHL-atc |
| EMMITT MARTIN III, TADARRIUS BEAN, DEMETRIUS HALEY, DESMOND MILLS, JR., AND JUSTIN SMITH, | ) ) ) ) | No. 2:25-mc-00031-SHL-atc |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT JUSTIN SMITH'S MOTION TO UNSEAL AND GRANTING IN PART AND DENYING IN PART NON-PARTIES' MOTIONS TO INTERVENE AND UNSEAL RECORDS**

Before the Court is Defendant Justin Smith's Supplemental and Amended Motion for New Trial Pursuant to FRCrP 33, as Well as, Motion to Unseal Record and Hold Evidentiary Hearings, filed June 17, 2025. (ECF No. 863.) This Order addresses the portion of the Motion that seeks to unseal the record. The Government responded to Smith's Motion on July 21, 2025. (ECF No. 904.) Styled as the Omnibus Response to Defendants' Motion for New Trial, the response did not address Smith's request to unseal the record.

In addition to Smith's Motion, on June 25, 2025, the City of Memphis and Chief Cerelyn Davis filed a Motion to Intervene and Permit Access to Sealed Documents. (ECF No. 890.)[1] Although that motion was initially docketed in this case, the Clerk's office subsequently opened a miscellaneous case for the filing of that motion. (See No. 2:25-mc-00030-SHL-atc.) On July

---

[1] According to the amended certificate of consultation as to that motion, the Government took no position on the motion and "would submit the request to the Court's discretion." (ECF No. 893 at PageID 16270.)

22, 2025, the non-profit news organization the Daily Memphian filed a separate motion seeking to intervene for the purpose of unsealing the records, which also was docketed in a separate related miscellaneous case. (See No. 2:25-mc-00031-SHL-atc, ECF No. 2.)[2]

For the reasons outlined below, Smith's motion to unseal is **GRANTED** as to all of the documents sealed pursuant to the protective order entered on June 13, 2025 (ECF No. 847), and the City of Memphis and the Daily Memphian's motions to intervene to unseal the records are **GRANTED IN PART AND DENIED IN PART**. Those Parties, like the rest of the public, shall have access to the unsealed documents, but they are not otherwise allowed to intervene in this case.

## BACKGROUND

Defendants Taddarius Bean, Demetrius Haley, Emmitt Martin III, Desmond Mills, Jr., and Smith were charged in a four-count indictment relating to injuries sustained by, and ultimately the death of, Tyre Nichols, who was arrested after a traffic stop in Memphis on January 7, 2023. (ECF No. 2.) Defendants were detectives with the Memphis Police Department at the time of Nichols' arrest. (Id. at PageID 8.)

Mills pleaded guilty to the indictment on November 2, 2023 (ECF No. 92), and Martin did so on August 23, 2024 (ECF No. 500). Bean, Haley, and Smith proceeded to a jury trial, which began on September 9, 2024. (ECF No. 561.) On October 3, 2024, the jury returned verdicts finding Bean and Smith guilty on the obstruction of justice count, and Haley guilty on

---

[2] According to the certificate of consultation, Defendants Martin and Mills took no position on the Daily Memphian's motion, while counsel for the United States and for Defendants Bean, Haley, and Smith provided no response. (No. 2:25-mc-00031-SHL-atc, ECF No. 2 at PageID 5.)

2

all four counts.³ (ECF No. 627.) All of the Defendants were set to be sentenced the week of June 16, 2025, beginning on the Monday of that week. (See ECF Nos. 818–822.) Judge Mark S. Norris, who presided over the case from its inception, was to handle the sentencings.

On June 13, 2025, the Government filed a sealed Motion for Protective Order, as well as the document the motion sought to seal. (ECF Nos. 844 and 846.) The motion explained that the Government "intends to provide a Notice of Disclosure of Oral Communications that sets forth certain ex parte communications by the Court regarding the above styled case," and requested that the "Court enter a protective order to protect the Government, the Defendants, and their counsel and agents from claims of improper disclosure of sensitive information contained therein." (ECF No. 844 at PageID 15945.) The Government explained that, "[b]ecause the Notice contains information regarding an ongoing criminal investigation, the release of this Notice without any restriction could compromise said investigation." (Id.) The same day, Judge Norris entered, under seal, an order granting the Motion for Protective Order. (ECF No. 847.)⁴

The protective order provided as follows:

> (a) Pending any further order of this Court to the contrary, defendants and defense counsel shall be prohibited from disclosing the Notice, and the subject matter contained therein, to anyone other than authorized persons defined as defendants, defense counsel, their respective employees and any person retained by counsel to assist in the preparation, trial, or appeal of this criminal action (or any collateral civil matter arising directly from this criminal action), including their consultants, agents, experts, and investigators. With respect to such persons, the Notice shall be disclosed to the person only to the extent necessary to perform the work for which the person was retained; and the person shall not retain the Notice after his or her work related to this criminal action has concluded; and

---

³ Haley was found guilty of the lesser charges of Counts 1 and 2. (ECF No. 627 at PageID 9514.)

⁴ Because this Order is unsealing the documents that were sealed pursuant to the June 13, 2025 order, it is also unsealing that order, and refers to its content, as well as the content of other related sealed orders, herein.

> (b) Should defendant or defense counsel need to file any motion, pleading, or other notice referencing the Notice, defendant and defense counsel shall be required to file any such document under seal.

(Id. at PageID 15955–56.)

In the Government's Notice, the United States Attorney for the Western District of Tennessee (the "U.S. Attorney") described, by way of background, an incident involving one of Judge Norris' law clerks that occurred on October 8, 2024, just days after the verdict. The law clerk, who had returned to Memphis to assist with the trial in this matter, "was the victim of an auto theft, especially aggravated burglary and an attempted murder" and "[d]uring the commission of the crimes, the clerk suffered a gunshot wound to the chest." (ECF No. 846 at PageID 15952.) The victim was staying at the home of another law clerk who had previously worked for Judge Norris on this case. (Id.)

The Notice stated that Memphis Police Department investigators believed that a group of juveniles committed the attack, and Judge Norris wanted those responsible to be held accountable. Judge Norris also expressed concern about the clerk's well-being, and "evidenced reasonable frustration with the police investigation." (Id.) Presumably following their own investigation, federal investigators from the United States Marshals Service and the FBI "concluded that there was no federal nexus for the shooting," a conclusion shared by the U.S. Attorney. (Id.) Three members of the U.S. Attorney's Office and the Assistant Special Agent in Charge of the FBI's Memphis office scheduled a meeting with Judge Norris for May 30, 2025, to "explain why investigators determined there was no federal nexus and why this Office would not be charging any federal crimes against any of the suspects in relation to the shooting of the clerk." (Id.) Thus, the meeting, requested by the prosecutors and law enforcement, was related to the potential federal prosecution of the suspects alleged to have shot Judge Norris' law clerk.

According to the U.S. Attorney, during that meeting, presumably related to the question of a "federal nexus," "Judge Norris indicated that his theory or belief was that at least one of the defendants in [this] case was in a gang and that the gang was responsible for the shooting of his clerk." (Id. at PageID 15952–53.) The U.S. Attorney stated that Judge Norris told the meeting's attendees that he believed that the intended target of the shooting was the former law clerk who had worked on the case, and who had been seen by one or more of the Defendants during the trial. (Id. at PageID 15953.) An Assistant U.S. Attorney who attended the May 30, 2025 meeting also contended that she remembered that, shortly after the law clerk was shot on October 8, 2024, Judge Norris informed her that "he could not meet with any member of the Memphis Police Department to give a statement regarding the shooting of his clerk, as MPD is 'infiltrated to the top with gang members.'" (Id.)

On June 13, 2025, Judge Norris recused himself from the case. (ECF No. 854.) The case was assigned to the undersigned the same day. Since the entry of the protective order and the filing of the Notice, the Parties have filed numerous documents under seal, consistent with the protective order.

## APPLICABLE LAW

"[T]he decision as to when judicial records should be sealed is left to the sound discretion of the district court, subject to appellate review for abuse." In re Knoxville News-Sentinel Co., Inc., 723 F.2d 470, 474 (6th Cir. 1983). "While the Court has discretion to seal filings where appropriate, the general presumption [is] that court documents are to be available to the public." St. John v. Napolitano, 274 F.R.D. 12, 21 (D.C. Cir. 2011) (citation modified). This presumption recognizes that the public has the right to inspect and copy judicial documents and files. Carter v. Welles-Bowen Realty, Inc., 628 F.3d 790, 790–91 (6th Cir. 2012) (citation modified). Thus,

"[o]nly the most compelling reasons can justify non-disclosure of judicial records." Lipman v. Budish, 974 F.3d 726, 753 (6th Cir. 2020). Moreover, "the greater the interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." Id. (quoting Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305–06 (6th Cir. 2016)).[5]

As to intervention, although Federal Rule of Civil Procedure 24 provides a means for intervening in civil cases, no mechanism exists for a private citizen to intervene in a criminal case. United States v. Perry, 360 F.3d 519, 532 n.10 (6th Cir. 2004). So, "[i]t is true that the Federal Rules of Criminal Procedure make no reference to a motion to intervene and that it is, therefore, rare for a third party to intervene in a criminal action. Nonetheless, exercising their inherent power to manage their cases, federal courts have permitted third parties to appear in criminal cases under certain circumstances." United States v. Rakhit, No. 1:18-CR-33, 2021 WL 1145626, at *5 (N.D. Ohio Mar. 25, 2021).

## ANALYSIS

### I. Motions to Unseal

"[A] federal court may, in the proper circumstances, altogether prohibit the disclosure of materials bearing upon an ongoing criminal investigation." Flagg ex rel. Bond v. City of Detroit, 268 F.R.D. 279, 295 (E.D. Mich. 2010) (collecting cases supporting the proposition that the presumptive right of access to judicial documents may be overcome by a showing that such access "might adversely affect law enforcement interests" or that such access might interfere with a continuing law enforcement investigation). Here, as noted, the basis for the sealing of the

---

[5] Relying on the public's presumptive right to see judicial documents, Judge Norris previously entered multiple orders unsealing documents in this case. (See ECF Nos. 350, 470, and 542.)

6

Notice and subsequent filings that referred to it was that, "[b]ecause the Notice contains information regarding an ongoing criminal investigation, the release of this Notice without any restriction could compromise said investigation."  (ECF No. 844 at PageID 15945.)

In the weeks since the Government's motion to seal the Notice was filed and granted, there have been multiple indications from the Government that the previous justification for sealing the document—to protect against compromising the ongoing investigation into the shooting of Judge Norris' law clerk—is no longer operative.  First, the Government did not oppose unsealing the document when the City sought to intervene.  (See ECF No. 890 at PageID 16250; No. 2:25-mc-00030, ECF No. 2 at PageID 3 ("[T]he Government takes no position on this Motion and would submit the request to the Court's discretion.").)  Then, when Smith moved to unseal the documents in his motion that also sought a new trial and additional discovery, the Government made no argument in support of the materials remaining under seal.  (See ECF No. 904.)  Similarly, the Daily Memphian indicated that, as of the date of its filing of its motion to intervene and unseal the documents, counsel for the United States had not yet indicated whether it opposed the motion.  (No. 2:25-mc-00031-SHL-atc, ECF No. 2 at PageID 5.)  The Government has not responded in opposition since that filing, and the time to do so has expired.

The Court does not doubt that the public revelation of the Notice and subsequent filings referring to it might, at some point, have potentially compromised the ongoing investigation. But given the time that has passed, along with the fact that the Government has not reiterated the need for the Notice to remain under seal, the Court concludes that any such risk has since abated. The absence of any continuing justification for sealing the Notice, along with the presumption that court records should be open, leads to the conclusion that the Notice, and the subsequent filings relating to it that were sealed pursuant to the protective order, should now be unsealed.

Smith's motion to unseal is therefore **GRANTED**. For the same reasons, to the extent non-parties the City of Memphis (No. 2:25-mc-00030-SHL-atc) and the Daily Memphian (No. 2:25-mc-00031-SHL-atc) sought to have the filings unsealed, those motions are also **GRANTED**.

## II.    Motions to Intervene

To be clear, to the extent that the motions to unseal filed by the non-party entities are being granted, it is done in the context of the miscellaneous cases in which they have appeared, and not to the extent they seek that relief in conjunction with intervening in this matter. That is because, for the reasons explained below, the motions to intervene by the City of Memphis and the Daily Memphian are **DENIED**.

The Daily Memphian asserts that it should "be permitted to intervene for the limited purpose of pursuing access to records filed in these proceedings and that the Court [should] immediately enter an order unsealing all of the court filings in this case that have been placed under seal since June 11, 2025." (No. 2:25-mc-00031, ECF No. 2-1 at PageID 8.)  Although the City of Memphis also asserts that it has standing to intervene as a third party "asserting the public rights," it also relies on its status as a civil defendant in Wells v. City of Memphis, et al., 2:23-cv-0224-SHL-atc, a civil matter that is also based on the circumstances surrounding Nichols' arrest and death. The City asserts that, "[w]hile Federal Rule of Civil Procedure 24 is not binding on this Court in the Criminal Matter, it is persuasive," and "it allows for intervention by a non-party who 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.'" (No. 2:25-mc-00030-SHL-atc, ECF No. 3 at PageID 8 (quoting Fed. R. Civ. P. 24(a)(2)).)

Since the non-parties filed their original motions to intervene, the City filed a Motion for Leave to Supplement Motion to Intervene and Permit Access to Sealed Documents (No. 2:25-mc-00030, ECF No. 8),[6] and the Daily Memphian filed a Supplemental Memorandum of Law in Support of Motion by Daily Memphian to Intervene and for the Unsealing of Court Records (No. 2:25-mc-00031, ECF No. 6).  In its supplemental filing, the Daily Memphian reiterated many of the arguments included in its original motion, and took umbrage with the Court's long-followed approach requiring that its motion to unseal documents in a criminal case be filed in a separate miscellaneous case.  The Court articulated this approach during the July 24, 2025 report date in this matter, which counsel for the City of Memphis and the Daily Memphian attended.  (See ECF No. 911.)  In its supplemental filing, the Daily Memphian asserted that "[i]t should have been crystal clear to the Court in July 2025 that forcing the creation of new miscellaneous civil proceedings rather than permitting intervention was the wrong decision and not, in fact, what is required by the Sixth Circuit or how the court system should operate."  (No. 2:25-mc-00031, ECF No. 6 at PageID 22.)

It was not crystal clear at the time of the hearing, nor is it so today.  The authorities the Daily Memphian relies upon do not demonstrate that the Court's policy—requiring that motions to intervene be filed as miscellaneous matters instead of allowing direct intervention into a criminal case—is not an acceptable approach.  The Daily Memphian predominantly relies upon Application of Storer Commc'ns, Inc., 828 F.2d 330 (6th Cir. 1987).  That case cited United States v. Criden for the proposition that "motions for closure of pretrial criminal proceedings must be docketed sufficiently in advance of hearing on or disposition of such motions to afford

---

[6] Given that this Order addresses the relief the City seeks in its motion to intervene, its motion to supplement that filing is **DENIED AS MOOT**.

interested members of the public an opportunity to intervene and present their views." Id. at 335.

The court in Storer explained that

> Motions for closure of criminal proceedings, both before and during the trial, must be posted promptly on the docket sheet, thus giving notice to the public. When such motions are posted, media organizations may move to intervene for the purpose of contesting closure of hearings and the sealing of documents. See United States v. Criden, 675 F.2d 550, 555, 559 (3d Cir. 1982) (motions for closure of pretrial criminal proceedings must be docketed sufficiently in advance of hearing on or disposition of such motions to afford interested members of the public an opportunity to intervene and present their views). We have previously cited Criden with approval, In re Knoxville News-Sentin[e]l Co., 723 F.2d 470, 474 (6th Cir. 1983), and now adopt its formulation for providing notice and an opportunity for the public to present claims of First Amendment rights of access to pretrial criminal proceedings.

Storer, 828 F.2d at 335. The Storer court continued that, in such circumstances, "[a]fter giving defense counsel and media representatives an opportunity to be heard, the court can then proceed to consider the submitted materials in camera if that is required." Id.

This is not, of course, a circumstance where the Daily Memphian is seeking access to closed pretrial criminal proceedings. But, even more fundamentally, the Court's approach that does not allow formal intervention but instead requires the opening of a miscellaneous case to seek access to the documents in a criminal case provides the Daily Memphian with exactly what it seeks: an opportunity to be heard as to the sealing of the documents in the criminal matter.[7]

---

[7] The Court acknowledges that, in spite of the miscellaneous matters having both been associated with the criminal matter, the parties that have moved to intervene may not automatically receive all electronic notifications of filings in the criminal matter, as the Court incorrectly suggested they would at the July 24 hearing. They would, of course, receive electronic notification of filings related to the issue they have raised. Moreover, as the Daily Memphian acknowledges (see No. 2:25-mc-00031-SHL-atc, ECF No. 6 at PageID 21), to the extent it wants to receive notifications of filings in this or any other case, it can do as reporters and other interested members of the public have long done—that is, contact the Clerk's office and be added to the distribution list, or sign up for electronic notifications in the Pacer system.

As the Court alluded to at the July 24 hearing, because the rules of criminal procedure do not contain a formal means for intervention, courts in this and other circuits have developed different approaches when faced with motions to intervene in criminal matters.  So, in United States v. Rakhit, the court found that it would be inappropriate to allow formal intervention of a third party into a criminal matter, but granted the party leave to file a motion in the criminal case. 2021 WL 1145626, at *4–5.  In United States v. Jenkins, the court denied a newspaper's motion to formally intervene when it sought permission to challenge a local criminal rule regarding its ability to contact jurors after trial.  No. 12-15-GFVT, 2012 WL 5868907, at *2 (E.D. Ky. Nov. 20, 2012).  The court explained that "though a formal intervention is not appropriate in the criminal context, the Sixth Circuit has provided private parties the opportunity to appear in certain cases to challenge an order that might impair their rights in some manner."  Id.  Similarly, when a class of plaintiffs filed a motion to intervene in a criminal matter to gain access to a sealed transcript from an in-camera pre-sentencing conference, the court in In re Morning Song Bird Food Litigation denied the motion for formal intervention, but invited the plaintiffs to file a response in a related miscellaneous action.  119 F. Supp. 3d 793, 796 (S.D. Ohio 2015), aff'd, 831 F.3d 765 (6th Cir. 2016).

At the same time, decisions from other circuits allow intervention even though there is no formal rule of criminal procedure authorizing it.  See, e.g., United States v. Aref, 533 F.3d 72, 81 (2d Cir. 2008) (holding that "a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper"); In re Associated Press, 162 F.3d 503, 507 (7th Cir. 1998) (approving motion to intervene as an "appropriate procedural mechanism" to assert right of access); United State v. Bas, No. CR JKB-16-0324, 2022 WL 1270841, at *1 (D. Md. Apr. 28, 2022) (explaining that "[t]he Fourth Circuit has confirmed that the First Amendment right of

11

access also permits third-party intervention, though it has not identified the exact mechanism for doing so in district court").

The practice in this Court has been to allow third parties seeking intervention in criminal matters to file their request in a separate miscellaneous matter. That approach ensures that those parties will be heard on the issue they have raised, without creating an ad hoc procedure that does not currently exist.[8] The fact that those interests are being addressed in a miscellaneous case, as opposed to in the underlying criminal matter, is a matter of process, not substance. And, although the Daily Memphian asserts that "every day that the Court continues to refuse to unseal the improperly sealed records in the criminal case serves to exacerbate the denial of the public's right to monitor judicial proceedings" (No. 2:25-mc-00031-SHL-atc, ECF No. 6 at PageID 21), the procedural means for asserting its right of access would not otherwise have altered the speed with which the Court would have addressed its underlying request. As always, a court's duty is to be deliberate in consideration of important issues, not to meet some arbitrary timeline that a litigant's counsel believes is appropriate.

While the Court might not have moved with the sort of alacrity that the Daily Memphian would have preferred in ruling on the motions to unseal the filings in this case, or on the accompanying requests to intervene, the Court is presiding over a large case with many complex issues. It will continue to be deliberate in issuing its rulings in this and every case.

## **CONCLUSION**

For the foregoing reasons, the portions of the motions filed by Smith, the City of Memphis, and the Daily Memphian seeking to unseal documents are **GRANTED**. The Notice

---

[8] Although intervention in criminal cases does not exist under the Federal Rules of Criminal Procedure, it could conceivably be added to the Local Rules of this Court. The undersigned has asked the Local Rules committee to examine this issue.

(ECF No. 846) and all documents related to the Notice that were previously filed under seal shall be unsealed.[9] To the extent the City of Memphis and the Daily Memphian seek to intervene in this matter, those motions are **DENIED**.

**IT IS SO ORDERED,** this 28th day of August, 2025.

                                            s/ Sheryl H. Lipman
                                            SHERYL H. LIPMAN
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

[9] Pursuant to this Order, the following docket entries shall be unsealed: ECF Nos. 840, 844, 845, 846, 847, 848, 852, 861, 863, 872, 875, 879, 880, 883, 884, 888, 889, 890, 891, 892, 895, 896, 897, 898, 899, 900, 904, 906, 907, 909, 910, 915, 916, and 917. This Order renders **MOOT** the following motions to seal: ECF No. 862, 864, and 876.